UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:17-cv-24116-KMM

ENRIQUE MADRINAN,

    Plaintiff,

v.

HARBOUR SHOPPING CENTER, INC. and LUZA CORP. d/b/a DONUT GALLERY DINER,

    Defendants.
_____/

## AFFIDAVIT OF JOSHUA HOWARD SHESKIN

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) ss: |
| COUNTY OF BROWARD | ) |

BEFORE ME, the undersigned authority, personally appeared Joshua Howard Sheskin, affiant, who is personally known to me, or has presented identification, and who, after being first duly sworn upon oath, deposes and states as follows:

1. My name is Joshua Howard Sheskin; I am over the age of eighteen and I make this affidavit based on my personal knowledge of the facts stated herein.

2. I have reviewed and examined Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Disqualify [DE #33], along with the attached purported time entries [DE #33-1] filed in this matter by Plaintiff's counsel.

3. The time entries filed in support of the claim that I performed work for Mr. Madrinan in this matter (ten entries dated April 26, 2017) are false and fraudulent. I never performed any service for Mr. Madrinan on this matter at any time, let alone more than six months prior to the Complaint even being filed on November 8, 2017.

1

4. Likewise, DE #33-1 is the first time I have ever seen time entries purportedly billed for me in this matter. I was not aware that they existed until reviewing DE #33-1.

5. The work in those entries, if even performed at any time, was performed by another person – an outside contract paralegal named Lesley Peralta – and falsely billed under my name by the firm for litigation purposes. This was the firm's practice when I was there.

6. It was originally my impression, when I started working there, that time entries, such as the ones in question, were billed by the paralegal off-site at her rate. I was later made aware that the firm had to make $4,500 per case, to make the case profitable. That was accomplished by billing ten hours per-file, before a file even reach an attorney's desk, and those ten hours pre-file were billed at the rate of $450 per-hour. $450 dollars per-hour, despite the fact that a paralegal performed them, if they were performed at all. However, these were all cookie cutter ADA Actions that needed less than three hours of work (at the most) pre-file.

7. Notably, the alleged time entries at issue in this case, include authoring discovery six months in advance of the case being filed. Because most cases settled upon filing, and Federal Disability Advocates wanted to bill hours before they settled, they had their off-site team who handled the pre-filing, filing, and service, serve discovery with the Complaint. I repetitively told Mr. Lopez, the real person in charge of Federal Disability Advocates, this practice was useless because a party cannot propound discovery until after the scheduling conference. I even argued that it was counter-productive because it led to a debate over when, and if, discovery was served, which unnecessarily increased legal fees. Mr. Lopez's response was that increasing legal fees was what I was supposed to do, and that serving discovery with the complaint was part of how to get to ten hours pre-filing.

8. I was disciplined by firm partner Mario Lopez for not having billing records that reflected ten hours of work for each case before it was filed. I strongly disagreed with the practice, of stretching what amounted to less than three hours of a paralegal's time into ten hours of attorney billable work. I warned Mr. Lopez, on numerous occasions, that this practice would cost the firm credibility in the legal community, risked sanctions or worse from federal judges, and was unethical. I even brought Mr. Lopez case law on the subject, for which I was consequentially disciplined. I refused to partake in the practice, I never once submitted a billing record to a court on behalf of Federal Disability Advocates. I took to mediation billing records that did not reflect this ten hours, I did not take a part in what I considered fraud.

9. I had several meetings with Mr. Lopez and other interested stakeholders, in which I was promised the help I needed, and changes to the unethical ways of doing business. However, it became clear to me, after four months, that these meetings contained nothing but empty promises. Knowing things would never improve, based on constant beratement by Mr. Lopez over my refusal to falsify billing records, my refusal to allow the "experts" to determine what cases settled for and how they were litigated, and the filing of over forty cases, which I did not want filed, and were filed in my name rather than Mr. Lopez's, I left the firm following the advice of a Middle District Magistrate.

10. Mr. Lopez insisted that the dictates of the firms "experts," who were not attorneys but provided the firm with cases, control how cases were managed and settled. Following the wishes of the clients, over the wishes of the "experts," led to Mr. Lopez going on a tirade against me for about three of the four months I worked there. This tirade, started with being berated for hours every day that I was in town (which was not every day because I had a lot of cases out of town). The beratement usually lasted several hours in the mornings, which is emotionally

draining, and a waste of time when there are two-hundred plus cases and one attorney to handle them. The beratement would sometimes culminate in Mr. Lopez throwing objects at me, including a dreidel, which he thought made his point even stronger, and as a Jew I thought made him insensitive (at best). When Federal Disability Advocates finally hired someone to help me, she was abused as well, thought that even two lawyers could not handle the caseload we were expected to, and quit after about two-weeks. Another associate who briefly assisted me was fired for settling cases against the wishes of an expert.

11. After four months of meetings promising changes, help, and ethical ways of doing business, I was in a terrible situation. The firm filed over forty cases in a month using my credentials, instead of Mr. Lopez's, and these were cases I objected to the filing of because I was already so overworked. At the same time that I realized no changes would ever take place, I was summoned by a magistrate in the Middle District at the behest of more than one judge. While there I received the blame for mismanagement and unethical practices that occurred before I came to the firm, for things the experts insisted on that I objected to, and most importantly, for already being overloaded to the point of it being unmanageable (causing me to fail to meet deadlines), while having forty filings in Florida, Texas, and Colorado, in my name filed in a month. The judge instructed me that because I was being overloaded and, that overload was compounded by new cases filed against my wishes using my credentials without authorization, I needed to figure out whether it was going to change, and if not my only ethical course of action was to resign.

12. The Middle District Magistrate told me to resign on a Friday afternoon in Orlando, I decided in the courtroom to resign. I told the firm the following Monday morning that I was resigning effective at the end of the day.

13. I filed notices of withdrawal on what I thought was every case that I had with Federal Disability Advocates. I did not want Federal Disabilities Advocates decision to overload one attorney, with two-hundred plus cases, to adversely affect the clients. Hence, attached to my withdrawal notices were letters of resignation, placing the onus for the status of the cases on my inability to handle the volume, which was a personal sacrifice, since I never consented to the volume, and was promised a team of six to handle it. I thought placing the onus on me might buy some of the clients slack they needed in their cases.

14. Many of my notices to withdraw were denied, especially in the Middle District, because the firm did not notice anyone else on the cases, even after I left. When others were noticed on the cases, weeks later, I attempted to renew all of my denied motions. Although I am sure I missed some of the denials, I attempted not to, and when I renewed them after other Counsel made an appearance some of them were still denied.

15. I never supervised any work in this matter on behalf of Mr. Madrinan. I had a title that seemed important, but Mr. Lopez was in charge of everything, was very insistent on being in charge, was very committed to the principle that anything I suggested was a good idea was actually a bad idea, and everything I told him that was unethical was ethical. As a PIP Lawyer, Mr. Lopez believed that he, and the "experts" (who remember were not attorneys) knew what was right and ethical.

16. I never had any conversations with Mr. Madrinan or anyone else, including internally, regarding Mr. Madrinan's allegations concerning Harbour Shopping Center, Inc. and Luza Corp. I met Mr. Madrinan once, in what was probably May of 2017, but could have been June. This case was not discussed at that meeting at all.

17. I am not aware of any confidential information Mr. Madrinan may have regarding this matter that may affect him adversely.

18. The fact that I was involved in negotiating settlements for Mr. Madrinan in other cases is inadmissible and irrelevant to any claim or defense in this matter. Settlements are about attorneys' fees amounts, they are not about the facts.

Under penalties of perjury, I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOSHUA HOWARD SHESKIN

SWORN TO AND SUBSCRIBED before me on this __1__ day of ~~January~~ February, 2018, by JOSHUA HOWARD SHESKIN, who is ( ) personally known to me, or (✓) has presented the following as identification: __FL DL__.

_____
Notary Public, State of Florida
Printed Name: _____

TARYN JEHLEN
MY COMMISSION # FF199251
EXPIRES: February 12, 2019

My Commissions Expires: _____

(SEAL)

6